Mr. Anderson. This is EEOCv.Kronos. Good morning, Your Honor. Thank you for your support. I'm Corporal Anderson representing the EEOC. I'm going to be here for five minutes for a vote, if I could. That's granted. And speak clearly. Sure. Your Honor, this case is Bethlehem case. We're doing it a second time. And this time we're asking the court to address three errors that we believe the district court made. First, a lot of facts in this scope aren't reading in a manner that's inconsistent with Kronos 1, the original time the case came up. Number two, imposing a confidentiality order on the EEOC that's unnecessary in the circumstances of this case. And that actually goes beyond confidentiality and intrudes on the EEOC's law enforcement responsibilities and its responsibilities as a FOIA determiner, as well as third parties' FOIA rights. The third question is whether the court dared in even considering imposing costs on the EEOC, having the EEOC share the costs of Kronos. And even if it wasn't dared to do that, our contention is that the court did not apply the correct standard. Had it done so, it would have failed it. Given the business that Kronos is in, you know what? That's a real issue. But it seems to me that in this case, the EEOC is saying, we have prerogatives and we want ours to be followed. And that's the impression that I got throughout this. Is that right? I mean, how much of this really matters if the district court imposed more confidentiality and other confidentiality requirements? Is this just a case of the EEOC saying, we want you to follow what we say? No, Your Honor. It's not just a matter of the EEOC saying that we want things our way. It's a matter of confining the regime, the Congress setup, and that this court and the Supreme Court, as hell, should be respected. Can I ask you a question specific to Kronos 1? Your first point, which is that the judge, Arlene, had modified the subpoena and makes inconsistent with the directive given in Kronos 1. We have two pieces to that, as I understand it. One of which was called the Paragraph 1 change. The change that sort of limited things down to... People with disabilities. No, that's the second one. I think of that as the disabilities only, because that was a modification of Paragraph 1 and 3. Your complaint as to Paragraph 1 only, as I understand it, was that it was limited down to things that were pertaining to Kroger. The addition was something to the effect of... Everybody. Right upon in creating or implementing tests for Kroger, that piece. So if we can, for shorthand, call that Paragraph 1, because it's just Paragraph 1 of the other disabilities only, because it relates to both 1 and 3. I'd like to focus for just a minute on the second one, the disabilities only one. Your assertion is that, if I understand it, that the district court saying you have to limit this to disability only validation issues is nonsense. As you say, it's a nonsensical position for the district court to have taken that. And I guess your point is that statistical analyses and validation studies aren't tied to anything in particular, like disability or race or gender. So saying you have to limit it to disabilities only is like asking for the square root of a duck. It doesn't make sense. It's not a logical thing. Have I understood your argument correctly? That's essentially correct. Validity relates to whether a test measures job performance. It doesn't matter why that validity study may have been conducted. Okay. But validity tests are done often in the context of measuring validity as to a specific class of people, right? Validity goes to a test measurement of performance of jobs or class of jobs, not people. I understand that, but I'm trying to find out whether as a factual matter. We're only trying to try it this way. Crono says, if I understand now, that we have some validity testing data, but it's only in the context of race issues. How does the validity test measure against this certain subclass of people? In other words, I understand it factually to be saying it's a validity test talking about validity concerning a specific group. Are you saying that they're just not telling the truth there, or is it not possible to have a test that gauges validity as against a particular group of people? I'm not saying that they're not telling the truth, but validity doesn't go to a particular group of people. Validity is a standard that measures. Does the test measure what it's supposed to be measuring? If it does it, I understand that. But if the validity test is set up in a way that says, okay, let's see how this test measures job performance amongst African Americans, and we can identify African Americans so we can test the test validity as it affects that class of people. Are you saying that information that would tell you how a test gauges job performance with respect to one class of people necessarily tells you validity as to all classes of people? There's no distinction between classes of people in terms of validity studies. I think what Judge Jordan is asking is, are we supposed to figure out how valid the validation test is? Or are you saying that the validation test, which is what's at issue, I think, is the validation tests work irrespective of the employees, the class of employees? The validation tests are relevant to the EUC's investigation irrespective of the reason the company may have conducted those tests. How can that be? Now, this is what I'm struggling with. And I apologize to my colleagues on the panel, but to me this is a very significant point. Because in Cronus One, you folks were told, do not go wading off into the race pool here because that doesn't have anything to do with Ms. Sandy's charge. And we're not giving you free rein to wander all over with the mandate you've got on a disability charge. So don't go off in the race direction. Cronus comes back and says, in this action, we've got validity information, but it only pertains to one group of people. That is, there was validity testing, but it focuses on a group of people. Now, I understand, I get the feeling we're talking at cross-purposes. And I apologize very much, Mr. Anderson, for not making myself clear. But if Cronus comes forward and says, there's validity testing, but it doesn't have to do, I mean, it was only tested and shows information with respect to an African-American subgroup, the only way I can understand your position, which is we get it anyway, is if the assertion you're making is validity testing, no matter whether it's limited to a subset of people, that is, the information in the test results has only to do with how African-Americans perform, is somehow should be taken as bearing on all other subgroups you could conceive of. I'd like to hear his answer. He hasn't had a chance to say anything. The question is, in the CDC's investigation, is the test job-related and consistent with business necessity and that's the statutory standard. And then this question, as far as our subpoena is concerned, is whether the validity studies that Cronus has are relevant, whether they might cast light on that question. And we think it's, in Cronus 1, this court held that the validity studies are relevant to that investigation. And Cronus has interpreted the subpoena in a way that relieves it of its responsibility to comply with Cronus 1. Thank you. Go ahead. Keep on going. You haven't had a chance to talk. We also ask the court to reverse the district court's judgment as to the confidentiality order. Well, what's wrong with the district court's confidentiality? Several things are wrong. Number one, it goes beyond confidentiality and attempts to manage the EUC's investigations, not just in this case but in other cases, to manage how the EUC keeps its files. It reports to Trump that a FOIA regulation that the EUC has promulgated. Can a court order trump FOIA? A court order can trump FOIA, but this court and the Supreme Court have held that the EUC, or agencies in general, should be given the first right to make FOIA determinations You can go ahead. You can ignore the red light because most of it was taken by the panel. So go ahead. You answer his question. What I was going to say is that there's a comprehensive quilt of confidentiality protections that the EUC is afforded in this case. Among those, the statutory protection, both in the ADA and the Trade Secrets Act. EUC's regulations supplement those. Policies supplement those. In this case, we've given a key stipulation that we will not provide the internal party in this case with any information during the investigation or after the investigation, except pursuant to the FOIA. So all confidentiality issues are funneled to that FOIA regime. Are you saying that there could never be a circumstance where a confidentiality order would be appropriate because the statutory and regulatory protections are always going to be sufficient? No, we're not saying that. We're saying that in this case, under the circumstances in this case, a confidentiality order is not necessary. So there's no good cause to impose one. But suppose it's not necessary. Does it do harm? What's wrong with adding the confidentiality provisions that the district court required? Why is that reversible? Because it's supposed to manage the EUC's investigation, not just in this case, but in other cases. But see, that's what I came up with first. So what? I mean, what's the harm to make it the extra confidentiality requirement? Because that's not confidentiality. That's an issue on the statutory obligations of the EUC. So it's the EEOC's prerogatives that you're concerned about. I don't see the harm with adding the extra confidentiality requirement. Well, we're not arguing about EUC prerogatives. We're arguing about our statutory mandate. But it's your position that the statutory mandate is that you get to decide what you can ask for, right? We get to decide to ask for relevant information. Unless we receive that relevant information, the commission gets to decide, as long as we're conducting the investigation according to the legitimate purpose, we get to decide how to use those materials. The district court said that the EUC has to be clear how it uses information with the court. And we asked the court to explain what that meant, but the court refused to do so. We can't use the information relevant to multiple charges in those multiple-charge investigations. Instead, we have to, according to the court, re-subpoena that material in the context of other investigations. But one of the standards for enforcing the subpoena in that context is that we don't already have the information. So what the Cronus is, in fact, saying is, we can't get it now, we can never get it in any investigation. The order just goes beyond confidentiality. This is to manage EUC's functioning as an investigative agency that trusts the sanity rights as a FOIA requester and trusts EUC rights as a FOIA determiner. But what's the harm? I mean, the district court... You said you want confidentiality. The district court said, okay, we want... I want this much more. What's the harm? The harm is that investigations, the kind of subpoena that we conduct, will be delayed, will be frustrated, for years and years and years. Not just this case, but there are cases to which this information could be relevant. You still have the information, though, right? We're talking about it as sort of a blameless third party and maintaining their ability to keep their trade secrets and everything else to themselves. Well, giving the information to EUC is not making it public. That's what they're worried about. But it doesn't. The statute and the regulations are not stipulated. Not directly, but perhaps indirectly it might. Their information may come out another way, through a FOIA request or something else. It could put it in anybody else's filing being relevant to them, and that person could ask for it, right? The person could ask for it in the context of their charge investigation, but the EUC has protections in that situation as well. But the district court provided no use shall be made of personal information regarding any program, employee, applicant, and or test maker without the prior permission of this court. What's wrong with that? Well, we don't know what it means. We asked the court to explain it, and the court did not do so. But again... The court just said, I won't explain it? The court just didn't address it. We asked for an explanation under consideration. The court never addressed it. But that provision is indicative of the court trying to control how the EUC uses information. And that's something that EUC has the statutory authority to do, and not the court. Hmm. I want to go back to the topic I was on with you and try to ask this a different way, because I still am not understanding your position. Carlos has said the only validity testing information they have pertains to how validity shows up against the class of African-American test takers. If I've understood... I don't think there's that. Assume that that is, and then maybe you can correct me on the factual piece. If that were true, what would the relevance of that testing be to the Sandy charge? Well, those African-Americans could be disabled as well. Sure. So you'd take a guess that maybe some piece of that would be, and probably would be. But let's assume that that's wholly speculative, whatever size that is. And what else would you say? Validity goes to how the test measures job performance. That's one of the questions in our investigations. So do you not necessarily assume, then, that if validity goes to job performance and how the test measures it, that what would be true for one class as to which there is information must be true for all classes? I'm not aware of anything that says that validity goes to minority groups or to non-minority groups. If the only class of people being dealt with are that class, I think... See, the impression I'm getting from the other side is this is the EEOC's backdoor way of doing what you, Third Circuit, told them they couldn't do in the Cronus run. You told them you can't ask for race stuff. They've come back. They're asking for it anyway. It's what they're trying to get because we've told them the only pool of information on this is about African-American test takers. So couching it in terms of validity doesn't disguise what they're really doing. They're trying to turn this into a race investigation. They're not entitled to do that. You told them they're not entitled to do that. Now I'm trying to get you to explain why that line of argument on their side is fallacious. Well, it's fallacious because we asked the district court to allow Cronus to redact the race-related information from the deduction. The court didn't decline to do that. Validity doesn't go to race or disability or sex or anything else. It goes to the test. And in an investigation where the test is at issue and whether it's job-related is at issue, validity studies are also at issue and they're relevant. And to your point about what this court held on Cronus 1, the race-related information that this court excised so we couldn't get related to paragraph 4 of the subpoena, that's the paragraph that asked for the race of the test takers. Sure, but you're not suggesting, are you, that if you asked for it in a different way in a different paragraph, that you'd be free to do it because we only spoke to paragraph 4 in Cronus 1, are you? We're not asking for the race of the test takers. We're asking for validity information that's relevant to our APU investigation, that's relevant to the same charge. And it may be relevant to other charges, but the only way you get there, if the pool of people as to whom they have validity testing is confined to African Americans, is if you make the assumption that all disability-afflicted people perform or have the same response to the testing as African Americans. And with that assumption, it may be relevant, right? I don't think that's correct, Your Honor. It's relevant regardless of those assumptions. It's relevant because you need to know who's trying to make it because there's no good assessment. It's a basic part of your argument that validation tests are valid and that they go across the line. All validation studies are relevant to EUC investigations in which job-relatedness and business necessity is an issue. Has that been accepted? Is that generally accepted, or is that a contested point? It's also a contested point in this case, but I think it follows pretty clearly from the broad Sheldon-Goldman standard. It follows pretty clearly from this Court's precedent on relevance leading up to criminal spying, including criminal spying. Okay. All right. You're past your time, and you'll come back for any rebuttal. Thank you, Your Honors. My name's Lance Ash. I'm entirely privileged to represent Cronus in this matter. Judge Beres is privileged to be back here for a repeat, so to the extent I give facts, I apologize for repeating it for him. My colleague, Kelly Kelko... Okay, what about that last point? Do you deny that validation tests appropriately can test validation studies, can appropriately test the ability of the test taker to do the job? Employment tests, if they're properly designed, certainly can predict the ability of someone to do the job. And do validation tests apply across the board? Validity studies in our standards under discrimination law have been done to address discrimination under Title VII. Race got brought up in this case simply because that's what they sought, but the same principles have been used to comply with Title VII, race, gender, national origin, et cetera. The validity studies need to ensure that the test is predictive and fair to each of those groups. And, for example, there may be gender differences in which, finally, for the ability test in particular, a test might be predictive for males but less effective for females using at least the same standards. Senator Anderson's point is that the validity test, it really is like asking about the square root of duck to say, oh, it's validity testing for African Americans. It just doesn't apply. It doesn't have anything to do with it. So if you've got validity testing, they're entitled to it. What's wrong with that? Number one, ever since Briggs v. Duke Power Company in 1971 from the Supreme Court, and since the Uniform Guidelines on Poor Selection Procedures was drafted and published in 1978, validation doesn't even become relevant. Child relatedness does not become relevant unless there's adverse impact, and that's been uniformed clear law. But that's not helping us with what we're doing. I'm asking a specific question which goes to this subpoena, this latest iteration of this subpoena, and it's a point they made in their opening brief, but you did not respond to in your answer brief, so it's important for you to do that now, Mr. Ash. They're making a technical statistical argument, and their statistical argument is that a proper validation study has nothing to do with the subgroup being tested. It just tells you whether the test is good or not, regardless of who's being tested, and whatever it says about African Americans, it would be good for everybody. Now, respond to that, please. The Disability Act is a whole separate deal. Under the Disabilities Act, a person who is disabled can request... I'm not asking about the law. I'm asking you to respond to their argument about testing instruments, which is not a legal question. This is a factual question. The fact predicate for their argument to us about Judge Schwab abusing his discretion is that he limited them in a way that is untenable because validity studies are not group-directed, and I need you to respond to that technical, factual question if you're able to do that, please. It varies, but generally speaking, validity studies to show whether or not a test is job-related are not directed specifically at a race or a gender or national origin. However... Well, wait a minute. So if they're not that, are they valid? Wait. Stop the chart, however, and then answer for us what's wrong with what Mr. Anderson is telling us. If that's true, why do you complain that you shouldn't give them the validity testing you have simply because it has to do with African-Americans? It has to do with job-relatedness across Title VII, but we believe, in the first place, and the opinion, the Columbus Law opinion, was interpreted in our case as being conjunctive that disabilities covered both categories. The EEOC has said it's disjunctive, and we've got the author of that opinion here, and so we can make that determination. Well, the answer, Judge, I don't think he's answered your question. Yes, a validation study investigates whether or not a test predicts job performance. And you have validation studies, right? We do. Okay, if you've got validation studies and they test job performance, why was it appropriate for Judge Schwab to say you can only have those tests if they go to disabilities? Because it sounds like what you're saying is agreeing with Mr. Anderson. There are several unique circumstances in this case. Number one, Ms. Sandy passed both our tests. We only have the customers. She got a high pass, which is the academic equivalent of an A, on the dependability test. She got a low pass, which is like a C, on the customer service test. As a result of passing both those CRONOS tests, she was sent in to be interviewed by the store manager. He interviewed her, and he turned her down. I have the feeling that we just veered off the road we were on, and I'd like to get back on the road we were on. I'm trying to deal with a specific subpoena in this case. The district court never purported to address this question by saying you don't get this validity information because Ms. Sandy passed the test. He ruled on it on a specific basis, which appears to be his impression that this was race-based information, and therefore the validity testing could not have relevance to this charge. Validation studies generally investigate fairness of groups protected by Title VII. Not only does it predict the same, but does it predict differently by race, by gender, by nationality? I think that's what Judge Jordan is saying. Let me ask you a real practical question. If you've got validation studies, and with this new limitation on disabilities, it's not going to produce anything, is it? There's probably nothing out there that has to do with just disabilities. Well, first place. Disabilities come in many different forms. I'm talking about your validation studies. You have this big group of validation studies that maybe aren't really key to race or disability or anything, which may have relevance to EEOC in terms of determining a lot of different issues We believe that the EEOC is seeking it, and the trial court believed the EEOC was seeking it for a whole different agenda than the city. The city's had five years from filing the charge without an investigation. But the EEOC is the EEOC entitled to ascertain what information is out there, what material is out there, that deal with validation testing. Under their guidelines, unless they show adverse impact, it's utterly irrelevant, and that's the same under the Supreme Court. Is that the argument to the district court? Because the district court didn't rule on that basis, did it? I mean, you're presenting to us, you're suggesting to us that we should uphold what the district court did on a basis that doesn't appear anywhere in the reasoning or action that often the district court does. I think the district court believed that there was race and gender information in the validity studies, and that the EEOC was seeking to backdoor that kind of information, which this court said you can't have, by seeking all of the validity studies, even though they had nothing to do with disability. If you're acknowledging, and maybe I've misunderstood you, if you're acknowledging that the validity studies in your client's possession test the fairness and predictive quality of the test, of the exam, regardless of race, gender, disability, then what possible basis can you have for saying it's not relevant to this investigation, other than your feeling about the loss and Miss Sandy already passing? If I stated that, I misstated, because it does not look at anything, I'm not aware of any kind of studies looking at fairness as to any specific disability or some generic total disability. Well, that's what the EEOC is asking. They're asking for your validity studies across the board. Which focus on race and gender. No, no. No, no. I mean, the only protection of fairness they look at is race and gender, but they're looking to see if it predicts job performance in these jobs. But your argument basically, you know, well, hey, just because our opinion said you can't have race, there's some possibility race is involved. We ought to strike it all together. We know that, we believe that race is considered and expressly dealt with in the validation studies. And we believe, therefore, they're trying to get the validation studies. And we're only talking about the study related to customer service assessment, because that's the only answer to the issue. We believe that doing that is trying to back your affirmation on race. I mean, they're seeking permission not only to put it in Miss Sandy's file, and we're a third-party vendor, they want to have the right to put it not only in other corporate files, but also in any respondent's file. But what's wrong with that? Isn't that their mandate from Congress, that they're supposed to find out? Title VII, there's nothing in Title VII of the Chase Law that authorizes anything other than investigating a specific charge. They don't have prior authority to go investigate whatever they want. And this is why this sort of arcane technical point is significant. If it is indeed the case that the validity study, whether it was focused on African Americans or not, provides predictive information with regard to all classes of people, isn't it perfectly within the EEOC's prerogatives and statutory authority to say, get it to us, because it does pertain to the Sandy charge. And if the consequence of that is, ha, ha, ha, we got you on other stuff, that doesn't make a lawful basis unlawful, does it? Their own technical assistance frame says that it is, in Sections 104.3 to 104.4, that, quote, disabilities vary so much that it is difficult and not impossible to make general determinations about the effect of various standards, criteria, and procedures on people with disabilities. As with other determinations under the ADA, the exclusionary effect of a selection procedure usually must be looked at in relation to a particular individual and its particular limitations caused by disability. Is that responsive to the question about the validity test, Mr. Ash? That's the only thing, and I'm glad or worried that I'm lacking in any communication skills here, because I'm just trying to get to that point with both Mr. Anderson and with you, a single technical point. And if you can see that the validity is not geared to people, but it's geared to the test, and whatever information you have could be relevant to disability charge, it seems like it's kind of game up for you on that, doesn't it? I don't agree with the game up, but I do agree, Your Honor, with the statement that the validity study does relate to whether or not the test predicts performance on a particular job, and they further relate to whether or not it predicts it fairly for... Okay, stop now. So why shouldn't the EEOC get it? I mean, if it... Right, if that's true, then... Well, because I know the guidelines in the Griggs version do power assessment on title. Okay. So it's a... At that point, your argument is the legal-based one based on Griggs and not a relevance one based on the actual information, right? To the extent they wish to see if the test predicts job performance generically is relevant. Thank you very much. That is exactly what I was trying to get at, and that's very helpful in my position. But that's actively the EEOC. I'm not suggesting you're giving up any of your legal arguments. The... Does the court wish to hear anything on the confidentiality? I'd like to know about the... It says that it's going to cost you $75,000 to comply. I didn't see anything in the record. How did you come up with that? We've got, if you look at the declarations of Annette Coon... Well, it says $75,000, but how do you... They limited... The EEOC sharply limited the financial version, and so we limited what that's going to cost. I mean, the subpoena written as of November 2010 called for 11 million Kroger-plus documents. Now that's 13 or 14 million. If there is... And we believe, depending on the interpretive, whether you limit it to a particular part of Kronos or whether you have to go Kronos-wide, it's going to cost as of November 2010, so it's up since. It's going to cost $6.5 million or up to $1.65 million, I think it is, to comply. In addition, of course, if there's a violation of test security, it's disastrous. We need to test at a cost of $1.5 million, but the damage from a marketing point of view to our customer base is absolutely huge. And there are no remedies under the EEOC's protection. There's no civil one. I mean, if they go in and just say, well, oops, we're sorry... Well, there is the Privacy Act. But we don't get a... The Privacy Act doesn't protect Kronos' cost of EEO. But that's sort of beside the point of this appeal, is that we're just talking about reimbursement for compliance, right? Not sort of what happens if they act badly. 200 times, reimbursement for compliance, yes. That's the 75 so far. But if they go forward further, we're going to ask them to pay everything over our half, over the $37,500. But the confidentiality, yes, is very different. The cost there is 70 figures. And it's regarding trial court as every other court that I've ever dealt with. Okay. Thank you. Thank you. Mr. Bowman, I have a question. Is it possible to move the EEOC's investigation forward at all without the pending subpoena? The EEOC has determined that it wouldn't be fruitful to do so. And that's obviously the EEOC's prerogative to use your term. And this court, in a recent case called UPFC, addressed that very issue. And in the UPFC case, the court said that the EEOC doesn't have to investigate one particular charge when it's trying to investigate whether class of individuals are being discriminated against. And the district court had erred in that case by making that determination. I wanted to address Mr. Dasch's point about the cost shifting issue. He and the district court both make a big point that Kronos is a third party and shouldn't have to bear these costs alone. But we agree that Kronos is a third party, but it's a third party and it's very special to a third party, I should say. The reason we're here, three years after we issued the subpoena, is because Kronos is the only, as far as we know, the only entity that actually has the information. The validation studies? The validation studies and a lot of the other information. Well, where did they get it? They created it and they sell it and they keep the records of it. And it's not our understanding that their clients don't have that information. So it is a third party in the sense that it's not a point to the charge, but it's not a third party in the truest sense. It's their business, in other words. It's their business. To make facts, to do validation studies. And so you're going to them because they have the information, you think? That makes them less than a third party in your view. In fact, they're out there running their business. And it's your view that because the business they've chosen is job testing, that the EEOC should be able to go to them and make them pay whenever the EEOC wants to because that's the business they've chosen. There may be extraordinary circumstances in which cost shifting could be within a judge's discretion, but that certainly isn't the case here. Certainly $75,000 wouldn't be good. So I can't speak to that. I mean, depending on the scope of it, let's say it's another case. You could grind a third party's business to a halt based on a really broad request that may even be considered relevant. I mean, how is it fair to burn a third party with that kind of a cost? To your point, that's what makes Cronus' objection to the scope of this so odd. Cronus is saying that we have to re-subpoena the information if it's relevant to others. The nature of this business is that this test applies to all of its clients. Its validity studies pertain to all its clients. And it's saying that if we get charged with sustaining those clients, we're going to re-subpoena Cronus each and every time. They're trying to do damage control to make sure that their proprietary information isn't all over the place. You can kind of understand why they're doing that. Sure. We understand that. But the confidentiality protections in place prevent what they're fearful of, and that isn't a reason to bring the case to impose costs on the government. Well, it sounds like one of those, we're the government, don't worry. That doesn't fly with everyone. But we're not arguing that. We're arguing for an application of the Freedom Test. And the Freedom Test is if Cronus is in the business, then yes, they should be subject to any set of costs. Did the district court make an individualized determination that the costs involved exceed that which Cronus may reasonably be expected to bear as the cost of doing business? We don't consider that. But shouldn't that be required? In other words, whatever else we do, shouldn't we remand so that the district court can make that kind of determination? Isn't that the standard? That is the standard, but we think that even if the standard were applied, it would not be met in this case. Cronus hasn't. That would be for the district court to say, not us, right? Cronus hasn't argued that it's met the standard. It focuses on the fact that it's the third party. Cronus hasn't applied the standard either. I'm not sure that is responsive to what Joe Soder is asking. It sounds like you're saying you don't need to send this back for anything. Just reverse and let us run ahead. But at a minimum, wouldn't we have to send this back to the district court on the cost shifting and say, that looked like you did this applying the Freedom Test, which you're obligated to do, please do that. I think you have the discretion to do that. I'm not sure that I would say that you have to do that. I know the EEOC doesn't want to do that because there's been a long time in this case, and I think we all appreciate that that's, for everybody concerned, that's probably been a challenging and frustrating thing. But isn't that sort of the customary and ordinary thing that the Court of Appeals would do in a circumstance like that if the district court doesn't apply the proper test? Sure, but the court knew the test, decided the test, and didn't apply it. You mean the district court? The district court knew the test, decided to do the test, but didn't apply it. Well, if it was wrong, why shouldn't we make it do it this time? That's the standard. It is. I didn't have a question. Do you have a question? Just one last point. Sure. On the scope issue, we also challenged the language that the court limited the EEOC to relating information that the current court relied upon. Oh, yes. Thank you. I was going to ask you about that. That's very problematic for a couple of reasons. Number one, it may not provide us all the information that's relevant to our investigation. For example, it wouldn't provide EEOC negative information about the validity of the test. Let's say there's information that Cronus has that says the tests aren't relevant, aren't predictive of drug performance. It's unlikely that Cronus would have the court rely upon that in creating a demanding test requirement. It also excludes evidence of validity that predates the relationship it has with Kroger and postdates the relationship it has with Kroger. And therefore? Therefore, that point should be struck, and it should be reversed on that point as well. Is there anything that the district court added that you think is acceptable? In our initial consideration, we asked the district court to... We understood the court's concerns, and we asked the court to allow... The court is specifically willing to race and to adapt the names of its other... of Kronus' other clients. We're perfectly fine with that. We're not seeking to investigate those other clients' prospective discipline. We're not seeking to erase information. It's not really relevant to this charge. Okay. I think we understand. Thank you.